**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-50204 |
| Plaintiff-Appellee, | D.C. No. 3:12-cr-03814-JLS-1 |
| v. | |
| ARTURO RIVERA-GALLEGOS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted May 10, 2017
Pasadena, California

Before: WALLACE, CHRISTEN, and WATFORD, Circuit Judges.

**1.** The prosecution did not commit misconduct by stating during closing

argument that the bloody rocks were located further up the trail from where Arturo

Rivera-Gallegos first encountered Agent Juan Ambriz. Rivera contends that the

prosecution committed misconduct by making that statement without having an

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

adequate evidentiary basis for doing so.  We disagree.  A Border Patrol agent testified at trial that the bloody rocks were located up the trail from where Agent Ambriz first encountered Rivera.  That testimony provided adequate evidentiary support for the prosecution's argument.  *See United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997).

**2.**  The prosecution did not sandbag Rivera by raising this argument for the first time during its rebuttal closing argument.  During Rivera's closing argument, his counsel argued that the jury should return a not guilty verdict if it believed Rivera's account that he turned to run away after seeing Agent Ambriz.  The prosecution permissibly responded to that argument during rebuttal by explaining why the evidence contradicted Rivera's account.  *See United States v. Bagley*, 772 F.2d 482, 494–95 (9th Cir. 1985).

**AFFIRMED.**

**_USA v  Arturo Rivera -Gallegos  15-50204_**

CHRISTEN, dissenting.

The majority decides that the prosecution did not misstate the evidence or sandbag Rivera in rebuttal closing argument, conclusions that seem to me to be contradicted by the record.  Because I would hold that the prosecution misstated the evidence and exceeded the scope of proper rebuttal, and because the prosecution did not meet its burden of showing that its misconduct was harmless, I respectfully dissent.

Rivera and his companions were confronted by border patrol agents on a dark desert trail as Rivera's group attempted to illegally enter the United States.  Rivera did not contest the government's unlawful reentry charge, but he went to trial on the government's allegation that he assaulted a border patrol agent on the night he was arrested.  According to the government's witnesses, border patrol agents knew that Rivera's group was approaching a narrow stretch of trail and they hid, just off the trail in the dense brush, waiting to arrest the group.  At the chosen time, Agents Gillespie and Ambriz stepped out onto the trail, turned on their flashlights, and hollered for the group to stop.  Rivera was first in the single-file line of people making their way through the desert, and he testified that when the agents jumped out, he pivoted in place to run back the way he had come.  But

-1-

because there was a person walking closely behind him, Rivera crashed almost immediately and landed in a heap. It is uncontested that Agent Ambriz wound up on top of Rivera, and that in the process of being handcuffed, Rivera's head was cut on some rocks. Photos taken that night show Rivera with a cut on his head. Another shows some blood on the trail.

The agents' testimony sharply contradicted Rivera's version of events. According to them, Rivera responded to the agents by rushing straight ahead and assaulting Agent Ambriz by charging into him. Up until rebuttal closing arguments, the case looked like a credibility battle. But the prosecutor made a statement in rebuttal closing that there was also physical evidence supporting the government's recitation of the facts. Rivera's counsel objected immediately that the government's argument misstated the evidence and exceeded the proper scope of rebuttal. Whether any such evidence had been presented to the jury hinges on what Agent Gillespie meant when he testified that Rivera's blood was found on rocks "up the trail" from where the agents first confronted Rivera and his companions. The prosecution argues that Agent Gillespie's testimony was consistent with the government's theory that Rivera charged forward, pushed Agent Ambriz back an unknown number of steps, and that the two landed in a spot that was *behind* the place where Agent Ambriz stepped out onto the trail.

Unfortunately, the transcript is muddled. What it shows is that various points of reference and gestures were used by the witnesses as they testified, and those gestures and references do not translate very well on appeal. ("Q. 'From where you and Agent Ambriz were standing, where is [the blood on the rocks] location in relationship to where you were standing before you came out on the trail?' A. 'I would say about where Ms. Stingley is.'"). Our examination of the trial transcript does not allow us to see the gestures the witnesses used, but the district court watched all the evidence as it was presented and it is significant, in my view, that the district court commented, "I don't know how anybody knows where anybody was. . . . We don't know exactly where everybody jumped out." The court was mindful that Rivera and his companions were confronted by border patrol agents in the dark, on a narrow unlit trail, and that what actually transpired was likely less than clear to the participants. As the district court observed, "This is pure and simple credibility."

It is not unusual that a portion of a trial transcript is ambiguous, and the ambiguous passage in this one is not what prompts me to dissent. I part from the majority because the prosecution made a very different argument in the district court from the one presented on appeal, and I am persuaded by the government's own contemporaneous, in-court concessions about what its evidence did and did

-3-

not show.

Shortly before closing arguments, the prosecution tried to recall Agent Ambriz as a rebuttal witness specifically because the government wanted to introduce evidence about "where [he] came out on the trail." Defense counsel objected and the parties discussed the issue at sidebar. The prosecution argued that the exact location that Agent Ambriz entered the trail was "critical and important" because it "devastates" Rivera's testimony that he turned around to head back the way he had come when he saw Agent Ambriz step onto the trail. The prosecutor was unequivocal in stating that this evidence was not yet in the record: "We didn't say where exactly it was that [Agent Ambriz] came out." The district court admonished the prosecution that it should have told the jury "exactly where everybody jumped out . . . the first time" Agent Gillespie took the witness stand. The prosecution responded by taking the position that it had not elicited the testimony the first time Agent Gillespie testified because "[the location of the blood on the trail] wasn't relevant then;" *i.e.* it was not relevant because Rivera had not yet testified that he turned around in a failed attempt to run away from Agent Ambriz. The district court was not persuaded that Rivera's testimony was a surprise to the prosecution, noting that Rivera explained his version of events in a recorded statement he gave to the government sometime shortly after his arrest.

-4-

Nevertheless, over defense counsel's objection, the district court offered to allow the prosecution to reopen its case in chief so that Agent Ambriz could put a mark on a map to show where he first encountered Rivera. Despite its argument that this evidence was both critical and missing from the record, the prosecution declined the court's offer and the lawyers proceeded to closing arguments.

In its rebuttal closing, the government presented a sketched map the prosecutor prepared after the sidebar but before closing arguments. The prosecutor used the sketch to illustrate an argument about where the bloody rocks were located in relation to where Agent Ambriz first stepped out onto the trail. Defense counsel immediately objected, correctly stressing that this part of the government's rebuttal argument was not responsive to Rivera's closing argument and misstated the evidence.

The district court allowed the prosecution to use the sketched map and argue to the jury that Rivera's testimony was "not consistent with the physical evidence." But the court instructed the jurors to rely on their "independent recollection of what we all heard here." The district court further instructed the jurors that "what the lawyers have said . . . is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls." When Rivera moved for a new trial, the motion was denied. The district court concluded

that any prosecutorial misconduct was harmless.

"We review district court determinations regarding the proper scope of rebuttal closing argument for an abuse of discretion." *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989). We "review the record *de novo* in order to determine an error's harmlessness." *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991). "The government bears the burden of persuasion with respect to proving that the error was harmless." *United States v. Mitchell*, 172 F.3d 1104, 1111 (9th Cir. 1999).

Having reviewed this record, I find no persuasive argument that the prosecution's rebuttal responded to anything said by defense counsel during closing. Defense counsel's assertion in closing that the defendant told the truth does not allow the prosecution to introduce new arguments. *See United States v. Rubinson*, 543 F.2d 951, 966 (2d Cir. 1976) ("While the prosecution in rebuttal may explain why it has not proven certain facts or respond to the interpretation which the defense has placed on its failure to present evidence, it may not use the defense's comments to justify the reference to facts or the assertion of claims which it could have, but did not, introduce at trial unless defense counsel's remarks assert collateral, exculpatory alibis or defenses which the government would not have been expected to negate previously."). On this record, I conclude that the

-6-

government held back its blood-on-the-rocks argument for rebuttal rather than presenting it when Rivera would have had a fair opportunity to respond. *See United States v. Maloney*, 699 F.3d 1130, 1150 (9th Cir. 2012) (Gilman, J., dissenting), *vacated on reh'g en banc*, 755 F.3d 1044 (9th Cir. 2014).

Unspoken gestures and incomplete sentences can cause problems on appellate review, but in this case we need look no farther than the prosecution's own arguments at sidebar to conclude that the exact location where Agent Ambriz entered the trail was not in evidence. And without that reference point, the defense had no fair chance to respond to the prosecution's argument that a photo of a bloody rock constituted "physical evidence" refuting Rivera's testimony about where he made contact with Agent Ambriz.

In concluding that the defendant was not given a fair chance to respond to this argument, I rely heavily on the district court's and lawyers' contemporaneous description of the testimony presented to the jury. And I cannot conclude that it is more probable than not that the prosecutor's belated argument had no material effect on the verdict. As in other cases where we have declined to dismiss prosecutorial misconduct as harmless, "[t]his was a comparatively close case that boiled down to a battle over credibility." *United States v. Weatherspoon*, 410 F.3d 1142, 1152 (9th Cir. 2005). That the prosecution felt the need to use its sketched

map in rebuttal reinforces that this was a close case. *See United States v. Alcantara-Castillo*, 788 F.3d 1186, 1197 (9th Cir. 2015) ("That the supervising prosecutor at trial—who, unlike us, actually observed the critical testimony and the jury's response to the key witnesses—felt motivated to take this risk suggests he may have had doubts about the outcome."). Absent an argument sprung upon the defense in rebuttal, the jury may have found Rivera credible and acquitted him of assaulting a federal officer. "Evidence matters; closing argument matters; statements from the prosecutor matter a great deal." *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). For the foregoing reasons, I respectfully dissent.